GOLLY v. ARMSTRONG'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS — PLEADING — ADMISSION OF PLAINTIFF'S REPRESENTATIVE CAPACITY.

Where a personal representative sues on a cause of action which he must sue on in his representative capacity, that is, a cause of action accruing to decedent in his lifetime, a plea of the general issue or other plea to the merits operates as an admission of his representative capacity and he need not prove it.

2. SAME—PLEADING—ADMISSIONS.

Where defendants by their answer did not question plaintiff's right to bring suit in her representative capacity as administratrix *de bonis non*, their objection that her bill does not allege her appointment as such, made for the first time at the hearing, comes too late.

3. NEGOTIABLE INSTRUMENTS—DATE OF INDORSEMENT—PRESUMPTIONS—REBUTTAL.

The presumption that certificates of deposit issued in the name of the husband alone, which were surrendered to the bank by the wife and others issued payable to the

husband or wife or the survivor, were indorsed by the husband on the date they were issued, when he was mentally competent, rather than on the date when they were presented to the bank, at which time he was mentally incompetent, *held,* rebutted by evidence to the contrary, although it was entirely circumstantial.

Appeal from Kent; McDonald (John S.), J. Submitted June 16, 1921. (Docket No. 65.) Decided July 19, 1921.

Bill by Ida M. Golly, administratrix *de bonis non* of the estate of Webster F. Armstrong, deceased, against the estate of Mary J. Armstrong, deceased, and others to re-open the estate of Webster F. Armstrong, and for an accounting. From a decree for plaintiff, defendants appeal. Affirmed.

*R. D. Woolsey (James A. Lombard,* of counsel), for plaintiff.

*Corwin & Norcross* and *Cross, Foote & Sessions,* for defendants.

FELLOWS, J. Webster F. Armstrong and his wife, Mary J., lived at Rockford in Kent county. They were married in 1907. While the record does not disclose the precise financial condition of each, it does disclose that Mr. Armstrong was a prosperous, substantial citizen owning land and having money in the bank. Mrs. Armstrong had some land which she sold for $2,000, and some personal property but how much does not appear. In December, 1916, Mr. Armstrong had a "stroke," but recovered somewhat from it, and it is undisputed that he was mentally competent to and did transact business until March 18, 1918, when he had another stroke and thereafter as appears from the undisputed testimony he was mentally incompetent to transact any business. He died intestate July 15th.

following and his widow was duly appointed administratrix of his estate. She reported in the inventory an estate of $15,816. The estate was administered, and after the payment of debts, expenses of administration, and the widow's allowance and statutory provision, there was left for division between her and Ida M. Golly, a sister of deceased, of Rome, New York, $10,300. One-half of this was paid to Mrs. Golly and she executed a receipt therefor and consented that Mrs. Armstrong be discharged as administratrix. Shortly after this Mrs. Armstrong died and William H. Myers was appointed administrator of her estate. His inventory disclosed an estate of upwards of $21,000. The amount of this inventory caused Mrs. Golly to make an investigation and it was learned that on May 10th the Rockford State Bank had issued a certificate of deposit for $2,500 payable to Webster F. Armstrong, and Mary J. Armstrong, or the survivor, in renewal of a certificate of deposit issued April 17, 1917, to Webster F. alone; that on May 14, 1918, the Old National Bank of Grand Rapids had issued two certificates of deposit payable to Webster F. or Mary J. Armstrong, or either or the survivor of them, one for $1,242, and the other for $1,863, in renewal of certificates of deposit bearing date April 11, 1917, and April 26, 1917, issued to Webster F. Armstrong alone, and that on the same day the Fourth National Bank of Grand Rapids had issued its certificate of deposit payable to Webster Armstrong and Mary J. Armstrong, or either or the survivor of them, for the sum of $2,132 in renewal of a certificate of deposit issued to Webster F. Armstrong alone on April 26, 1917. These certificates of deposit were not inventoried in Mr. Armstrong's estate, nor was any account of them ever rendered by Mrs. Armstrong. Mrs. Golly filed in the probate court of Kent county a petition for the appointment of herself as administratrix *de bonis non*

of the estate of Webster F. Armstrong and was forthwith appointed and letters were issued to her as such administratrix.     Thereupon this bill was filed making the administrator, Mrs. Armstrong's estate and all her. heirs defendants.     The claim in the bill was that Mr. Armstrong was mentally incompetent when he indorsed the certificates of deposit for which the renewal certificates were issued.     The defendants joined in an answer denying such mental incompetency but did not by their answer question the appointment of Mrs. Golly as administratrix *de bonis non.*     The trial judge found that Mr. Armstrong was mentally competent until his second stroke March 18, 1918, and that thereafter until his death he was mentally incompetent, and that the indorsement was made by him after this date, and entered a decree as prayed.     Defendants appeal.

Defendants' counsel thus state their position in their brief:

"There are two reasons why the plaintiff is not entitled to the relief sought in the bill of complaint and why the decree of the circuit court should not stand.

*"First.*     Ida M. Golly is not the administratrix *de bonis non* of the estate of Webster F. Armstrong, deceased.     The pretended order appointing her as such was and is void and of no effect because of failure to give proper notice on the petition praying for her appointment.

*"Second.*     The date of the transfer of the certificates of deposit not having been shown, the law presumes the indorsement and transfer was made at the date of the certificates themselves.     It conclusively appears that at the date of the respective certificates, Webster F. Armstrong was competent to transact his own affairs, therefore, the transfer and order making the same payable to himself and his wife, or either or survivor of them, was regular and lawful."

1. The bill of complaint as filed was entitled:

215—Mich.—13.

"Ida M. Golly, Administratrix *de bonis non* of the estate of Webster F. Armstrong, deceased, plaintiff, *v.* Estate of Mary J. Armstrong, deceased, William H. Myers, Administrator, *et al.*, defendants."

The answer was likewise entitled. It was an answer to the merits and, as before stated, raised no question of the regularity of the plaintiff's appointment; nor was such question raised by any motion before the hearing. Upon the hearing it was insisted that her appointment was invalid because no notice of the proceedings had been given to the defendants who it is claimed were interested parties. The general rule is announced in 18 Cyc. p. 994, as follows:

"The rule is well settled that where a personal representative sues on a cause of action which he must sue on in his representative capacity, that is a cause of action accruing to decedent in his lifetime, a plea of the general issue or other plea to the merits operates as an admission of his representative capacity and he need not prove it. By such plea plaintiff's character is not questioned but only his right to recover on the merits."

Our own cases are to the same effect; see *Cook* v. *Stevenson,* 30 Mich. 242; *Bachelder* v. *Brown,* 47 Mich. 366; *James* v. *Emmet Mining Co.,* 55 Mich. 335; *Farrand* v. *Caton,* 69 Mich. 235, 241. A distinction is made by some courts between causes of action which accrued to decedent in his lifetime and those accruing to the administrator after his appointment, but we need not concern ourselves with this distinction as the cause of action here asserted accrued, if at all, to decedent in his lifetime.

But it is insisted that plaintiff's bill does not allege her appointment as administratrix *de bonis non.* It is true that the bill does not set forth the details of such appointment, but the bill must be considered in its entirety, and, when so considered, we think it

plainly appears that the suit is brought by her in her representative capacity. It is so entitled and in one of the paragraphs of the bill proper, and in two of the paragraphs of the prayer her right to the fund in question is asserted to be by virtue of her representative capacity. Defendants did not question this until the hearing. It cannot be doubted that the probate court of Kent county had jurisdiction of the matter of the estate of Webster F. Armstrong, deceased, or that the circuit court for the county of Kent, in chancery, had jurisdiction of the subject-matter of this suit. The question being one of jurisdiction of the person and not one of jurisdiction of the subject-matter, we are constrained to hold that defendants' objection made for the first time at the hearing came too late.

2. It is the claim of defendants' counsel that the certificates of deposit which were surrendered when those payable jointly to Mr. and Mrs. Armstrong were issued were commercial paper, and there being no direct proof as to the date of their indorsement by Mr. Armstrong a presumption of law arises that they were indorsed by him on the day they bear date which was at a time when he was mentally competent to transact business. Counsel cite the following cases to sustain their legal contention: *Trader* v. *Chidester,* 41 Ark. 242, 249; *Murto* v. *Lemon,* 19 Colo. App. 314 (75 Pac. 160); *Dodd* v. *Doty,* 98 Ill. 393, 398; *Smith* v. *Nevlin,* 89 Ill. 193; *White* v. *Weaver,* 41 Ill. 409; *Stewart* v. *Smith,* 28 Ill. 397; *Rodriguez* v. *Merriman,* 133 Ill. App. 372, 378; 1 Daniels on Negotiable Instruments (6th Ed.), § 83; *Thomas* v. *Ruddell,* 66 Ind. 326, 329; *Hayward* v. *Munger,* 14 Iowa, 516, 518; *New Orleans Canal & Banking Co.* v. *Templeton,* 20 La. Ann. 141, 142; *Gray* v. *Brown,* 49 Me. 544, 548; *Higgins* v. *Watson,* 1 Mich. 428, 430; *Collins* v. *Gilbert,* 94 U. S. 753.

We do not understand that the trial court disregarded this presumption. There was no direct proof as to the date the certificates were indorsed. The trial court was of the opinion, however, that the circumstances surrounding the case which developed on the hearing were such as to overcome such presumption, which was a rebuttable one. He pointed out, and he is sustained by the record, that until Mr. Armstrong suffered his second stroke he transacted all his own business, that he went to the bank as occasion required and had his certificates renewed, taking the new ones in his own name; he points out the improbability that Mr. Armstrong would indorse the certificates and deliver them to his wife to have new ones issued in their place in their joint names on the same day they had been issued when he could himself have had them issued in that manner had he so desired. He also points out the probability that they were indorsed and turned over to Mrs. Armstrong when Mr. Armstrong was not able to himself go to the bank, and that this was after the second stroke. The trial judge had before him a large number of certificates which Mr. Armstrong had indorsed when mentally competent, and he had before him the indorsements in question. He finds the indorsements in question "were made at a time when Mr. Armstrong was in a weak physical condition" and concludes that this indicates "that the indorsements were made about the time they were used." These indorsements are not before us and we are not, therefore, in as advantageous position to judge as was the trial court (see *Collette* v. *Collette,* 211 Mich. 555, 564). All of the certificates except the one issued by the Rockford State Bank, which is not set out in full, contain a provision that interest shall cease at the end of one year. None of the certificates were surrendered by Mrs. Armstrong for renewal until some time after they were due. In

letters written to Mrs. Golly by Mrs. Armstrong while she was settling the estate is discernible an inclination to find fault with the amount Mrs. Golly is to receive from her deceased brother's estate. When we consider all the circumstances as exhibited by this record we are persuaded that the trial judge was right when he said:

"It seems to me that the evidence, though entirely circumstantial, warrants the conclusion that if Webster F. Armstrong made these indorsements they were made at or about the time that the certificates were presented, at which time it is conceded that he was mentally incompetent to transact any business."

The decree will be affirmed, with costs.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.